# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | | |
|---|---|---|
| GARY L. SCOTT | * | CIVIL ACTION NO.  09-0922 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| UNUM LIFE INSURANCE COMPANY OF AMERICA | * | MAG. JUDGE KAREN L. HAYES |

## MEMORANDUM RULING

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to remand [doc. # 5] filed by plaintiff Gary L. Scott.  Defendant Unum Life Insurance Company of America ("Unum") opposes the motion.  For reasons stated below, the motion is **GRANTED**.

## BACKGROUND

On August 6, 1991, Northeast Louisiana University (now known as the University of Louisiana at Monroe, hereinafter referred to as "ULM") hired Gary L. Scott as a plumber in its Equipment Maintenance Department.  (Pl. M/Remand, Exh. 2 [doc. # 8]).  Scott remained employed at ULM through January 17, 2007, when he retired due to a disability that first afflicted him some four months earlier.  (*See* Petition, ¶ 3; Pl. Exh. 1 [doc. # 1]).  Indeed, as of December 2, 2006, Scott began drawing monthly payments of $978.29 in long term disability insurance benefits on a policy offered through his employer and provided by Unum.  *Id*. at ¶¶ 1-4.  However, effective December 1, 2008, Unum abruptly terminated Scott's monthly disability benefits.  *Id*.  Scott appealed the termination decision through Unum's internal appeal process, but to no avail.  *Id*. at ¶ 5.

Accordingly, on April 29, 2009, Scott filed the instant suit against Unum in the Fourth

Judicial District Court for the Parish of Ouachita, State of Louisiana.  Scott contends that despite

his permanent disability, Unum has arbitrarily and capriciously refused to resume the $978.29

monthly disability payments.  *Id*. at ¶¶ 6-7.  Scott seeks to recover his unpaid benefits, penalties,

and attorney's fees.  *Id*., Prayer.

On June 4, 2009, Unum removed the case to federal court on the basis of federal question

jurisdiction, 28 U.S.C. § 1331.  (Notice of Removal).  On June 19, 2009, plaintiff filed the

instant motion to remand due to lack of subject matter jurisdiction.  Specifically, plaintiff

contends that the Unum policy or plan is a "governmental plan," not subject to ERISA.  Briefing

is now complete; the matter is now before the court.

## LAW AND ANALYSIS

It is axiomatic that federal courts exercise limited jurisdiction.  *Howery v. Allstate Ins.*

*Co.*, 243 F.3d 912 (5th Cir. 2001) (citations omitted).  A suit is presumed to lie outside a federal

court's jurisdiction until the party invoking federal jurisdiction establishes otherwise.  *Id*.  Here,

Unum invoked federal subject matter jurisdiction solely on the basis of a federal question.  (*See*

Notice of Removal).  As the party invoking federal jurisdiction, the removing defendant bears the

burden of demonstrating the existence of federal subject matter jurisdiction, via federal question.

*In Re: Hot-Head, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) (citation omitted).

The federal question statute confers district courts with "original jurisdiction of all civil

actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

"The presence or absence of federal- question jurisdiction is governed by the 'well-pleaded

complaint rule,' which provides that federal jurisdiction exists only when a federal question is

presented on the face of the plaintiff's properly pleaded complaint."  *Rivet v. Regions Bank of*

*Louisiana*,  522 U.S. 470, 118 S.Ct. 921 (1998).  "[A] suit arises under the Constitution and laws

of the United States only when the plaintiff's statement of his own cause of action shows that it is

based upon those laws or that Constitution." *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).

An "independent corollary" to the well-pleaded complaint rule is the "artful pleading" doctrine. *MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 490 (5th Cir. 2002) (*citing Rivet, supra*). This principle provides that a " plaintiff may not defeat removal by omitting to plead necessary federal questions." *Rivet, supra* (citation omitted). The artful pleading doctrine permits removal in cases where federal law completely preempts the plaintiff's state law claim. *Id*. As the Fifth Circuit observed,

> [c]omplete preemption converts a state law civil complaint alleging a cause of action that falls within ERISA's enforcement provisions into one stating a federal claim for purposes of the well-pleaded complaint rule. In other words, even if the plaintiff did not plead a federal cause of action on the face of the complaint, the claim is necessarily federal in character if it implicates ERISA's civil enforcement scheme.

*Lone Star OB/GYN Associates v. Aetna Health Inc.*, ____ F.3d ____, 2009 WL 2501340, *2 (5th Cir. Aug. 18, 2009) (internal citations and quotation marks omitted).

Indeed, ". . . if an individual, at some point in time, *could have brought his claim under ERISA §§ 502(a)(1)(B)*, and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA §§ 502(a)(1)(B)." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209, 124 S.Ct. 2488, 2496 (2004) (emphasis added).

## I.    Is There an ERISA Plan?

The initial inquiry of course, is whether the subject plan is an ERISA plan. If not, then ERISA does not apply, and jurisdiction is lacking. *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 976 (5th Cir. 1991). ERISA defines an "employee welfare benefit plan" as,

> any plan, fund, or program . . . established or maintained by an employer or by an
> employee organization, or by both, to the extent that such plan, fund, or program
> was established or is maintained for the purpose of providing for its participants
> or their beneficiaries, through the purchase of insurance or otherwise, . . . medical,
> surgical, or hospital care or benefits, or benefits in the event of sickness, accident,
> disability, death or unemployment . . .

29 U.S.C. § 1002(1).

To determine whether a particular set of insurance arrangements constitutes an "employee welfare benefit plan" the court must "ask whether a plan:  (1) exists; (2) [does not fall] within the safe-harbor provision established by the Department of Labor; and (3) satisfies the primary elements of an ERISA 'employee benefit plan'--establishment or maintenance by an employer intending to benefit employees." *House v. American United Life Ins. Co.*, 499 F.3d 443, 448 (5th Cir. 2007) (citation omitted).  If the court answers any part of the inquiry in the negative, then the "plan" is not an ERISA plan, and the court need not reach the remaining inquiries.  *Peace v. American General Life Ins. Co.*, 462 F.3d 437, 439 (5th Cir. 2006) (citation omitted).

    **a)  <u>Does a Plan Exist</u>?**

To answer the first question, the court must determine "whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Hansen*, 940 F.2d at 977 (quoted source omitted).  Unum produced a document entitled Group Long Term Disability Insurance Summary of Benefits (the "Unum plan").  (Def. Exh. A [doc. # 9]).  The Unum plan states that it is "governed by the laws of the governing jurisdiction and to the extent applicable by . . . (ERISA) and any amendments." *Id*., at pg. UACL001.  It sets forth the intended benefits (monthly disability payments); the beneficiaries (the employees of ULM and their survivors); the source of financing (employees are required to contribute, but premiums remain the employer's

responsibility);[1] and the claims procedure.  (*See*, Plan, §§ I, ¶¶ 1-3, 8; II; IV; V(B); VI(F); and

VII(B)(2).  Thus, there is a plan.

    **b) <u>Does the Plan Fall within DOL's Safe Harbor Provision</u>?**

    Next, the Department of Labor's "safe harbor" provision precludes a plan from ERISA

consideration if "(1) the employer does not contribute to the plan; (2) participation is voluntary;

(3) the employer's role is limited to collecting premiums and remitting them to the insurer; *and*

(4) the employer receives no profit from the plan.  29 C.F.R. § 2510.3-1(j))[2]  The plan must meet

all four criteria to be exempt from ERISA."  *House, supra* (emphasis added).  Although, Unum

points to various plan provisions to meet its burden, courts must also consider whether the

written policy provisions are consistent with the sponsoring organization's actual role during the

---

[1] *But see*, discussion, *infra*.

[2]  The regulation provides in full:
(j) Certain group or group-type insurance programs. For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which

    (1) No contributions are made by an employer or employee organization;

    (2) Participation the program is completely voluntary for employees or members;

    (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

    (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j))

plan's tenure.  *Davis v. Guardian Life Ins. Co. of America*, 2007 WL 2491344 (W. D. La. Aug. 30, 2007) (James, J.) (citation omitted).  Here, Unum has not adduced any evidence to demonstrate that ULM's actual role matched its purported obligations under the plan.  Indeed, according to ULM's website for its Office of Human Resources:

> [t]he Long-Term Disability Insurance is available to all full-time faculty and staff through UNUM Life Insurance Company and provides the employee with income protection in the event of a long-term disability. The plan provides employees with a choice of 50-, 40-, or 25-percent of their annual salary up to a maximum benefit payment of $5,000 per month due to a disability from a sickness or an accident. **Participation in the program is voluntary, with the total premium paid by the employee through payroll deductions.** Cost of this benefit is determined by the employee's age and annual salary. **Enrollment and additional information can be obtain by contacting the UNUM representative Ann Trichel at (318) 791-2445.**

http://www.ulm.edu/hr/policies/documents/longtermdisabilityins.pdf (emphasis added).

Clearly, the first two criteria of the safe harbor provision are met.  Moreover, Unum does not even argue that ULM profits from the plan (criterion four).  Thus, the only question is whether ULM's role is limited to little more than collecting premiums and remitting them to Unum (criterion three).

While the plan terms require ULM to provide Unum with certain employee information, and to forward a "certificate" to each insured,[3] ULM's website indicates that in practice, the prospective enrollee is to obtain enrollment and additional information directly from the Unum representative.  *See*, ULM website, *supra*.  Moreover, another ULM webpage lists "Insurance Vendors" and states that "[e]mployees may be eligible for various insurance options available through the University.  Employees who are interested in obtaining **supplemental insurance should contact the designated representative directly to obtain information about the different plans and premiums** within 30 days of their hire date."

---

[3]  Plan, § VI, ¶¶ C & D.

http://www.ulm.edu/hr/policies/documents/insuranceplancontacts.pdf (emphasis added).  The webpage then contains subheadings for "Health Insurance" and "Supplemental Insurance."  *Id.*  The "Health Insurance" subheading states that it is administered through the Human Resources Department – thus, evidencing a connection to ULM.  *Id.*  In contrast, the Unum policy is listed under "Supplemental Insurance" and identifies the contact person as Ann Trichel, without any reference to the Human Resources Department.  *Id.*  In other words, ULM plainly distanced itself from the Unum plan.  Furthermore, its payroll deduction and premium forwarding service does not exceed the limited employer functions permitted under criterion three of the Department of Labor's safe harbor provision.

Having determined that the Unum plan meets the four criteria set forth in the Department of Labor regulations, it necessarily follows that ERISA does not cover the plan, and the court's inquiry ordinarily is at an end.  *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 976 (5th Cir. 1991) (citations omitted).[4]  Under the circumstances, however,[5] the undersigned further finds that even if the Unum plan were an "ERISA plan," it constitutes a "governmental plan" not subject to ERISA.

## II.    Governmental Plan

By its terms, ERISA does not apply to an employee benefit plan if such plan is a governmental plan.  29 U.S.C. § 1003(b)(1).  As the party invoking federal jurisdiction, Unum

---

[4]  The court reaches the same result even without consideration of ULM's website.  Unum attempted to demonstrate that its policy constituted an ERISA plan by relying on the policy provisions.  However, to rely on written policy provisions, the proponent must show that the sponsoring organization actually complied with its contractual obligations.  *See Davis, supra* (citation omitted).  Unum has not done so here.

[5]  In his motion to remand, plaintiff did not suggest that the plan was not an ERISA plan; he solely argued that the plan was a "governmental plan," not subject to ERISA.  Nevertheless, Unum realized that it was obliged to demonstrate that its plan was an ERISA plan, and it attempted to do so.

bears the burden of demonstrating that the plan is not a governmental plan, and that the case is properly before this court.  *See Shirley v. Maxicare Texas, Inc.*, 921 F.2d 565, 567 (5th Cir. 1991) (removing defendant failed to establish that plan was not governmental plan); *Doty v. Sun Life Assur. Co. of Canada*, 2007 WL 2903851 (S.D. Tex. Oct. 2, 2007), *affirmed*, 286 Fed. Appx. 238 (Aug. 8, 2008) (removing defendant must demonstrate that plan is not exempted from ERISA coverage as a governmental plan).

The term, "governmental plan," refers to "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." *Shirley,* 921 F.2d at 567 (quoting 29 U.S.C. § 1002(32)).  The issue before the court is whether ULM constitutes the government of Louisiana, a political subdivision thereof, or an agency or instrumentality of either.  29 U.S.C. § 1002(32).[6]  Unfortunately, however, ERISA does not define a "political subdivision," "agency," or "instrumentality."  *Koval v. Washington County Redevelopment Authority*, 574 F.3d 238, 240 (3rd Cir. 2009).  Also, although the Fifth Circuit has had occasion to address the "governmental plan" exception,[7] the parties have not cited any Fifth Circuit decision that has categorically set forth the criteria that the courts should employ to discern whether an employer is a government entity.  Other circuits, however, have done so.

**a) Political Subdivision**

For purposes of discerning whether an entity constitutes a "political subdivision" under ERISA, the Second, Third, and Seventh Circuits have adopted the "NLRB test" "formulated by

---

[6] Unum does not contest that ULM "established or maintained" the Unum plan.  Indeed, a finding that the employer "established or maintained" the plan is a requisite component of an "ERISA plan."  *See* discussion, *supra*.

[7] *See e.g., Shirley, supra; Hightower v. Texas Hosp. Ass'n*, 65 F.3d 443 (5th Cir. 1995).

the Supreme Court in *National Labor Relations Board v. Natural Gas Utility District of Hawkins County, Tenn.*, 402 U.S. 600, 91 S.Ct. 1746, 29 L.Ed.2d 206 (1971), to determine what constitutes a 'political subdivision' exempt from the NLRB's jurisdiction under the National Labor Relations Act." *Koval, supra*; *see also*, *Shannon v. Shannon*, 965 F.2d 542 (7th Cir.1992); *Rose v. Long Island R.R. Pension Plan*, 828 F.2d 910 (2d Cir.1987).[8]  The NLRB test contains two prongs, only one of which need be satisfied. *Shannon, supra*.  An entity is deemed a political subdivision if it is "'either (1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate.'"  *Id*. (quoting *Natural Gas Utility District*, 402 U.S. at 604-05, 91 S.Ct. at 1749).

ULM meets at least one of the two foregoing prongs.  First, ULM is in the University of Louisiana system, whose Board of Supervisors is authorized by the Louisiana Constitution.  *See* La. R.S. 17:3217; La. Const. Art. 8, § 6.  Although the Board of Supervisors for the University of Louisiana System is designated by law as a "body corporate," it is also referred to by statute as an "agency" contained within the Louisiana Department of Education, which itself is a "body corporate."  *See* La. Const. Art. 8, § 6; La. R.S. §§ 36:651 & 36:642.  Moreover, the Department of Education, through its various management boards is tasked with educating the people of the State of Louisiana.  La. R.S. 36:642.  The state legislature is constitutionally required to appropriate funds for the operating and administrative expenses of the state boards and for the institutions that they oversee.  *See* La. Const. Art. 8, §§ 11 & 12.  Finally, the Board of Supervisors for the University of Louisiana System is appointed by the governor with consent of

_____

[8]  The Second Circuit reasoned that "[t]he NLRB guidelines are a useful aid in interpreting ERISA's governmental exemption, because ERISA, like the National Labor Relations Act, 'represents an effort to strike an appropriate balance between the interests of employers and labor organizations.'" *Rose*, 828 F.2d at 916 (citation omitted).

the senate.  La. Const. Art. 8, § 11.[9]

### b) Agency or Instrumentality

To define "agency" and "instrumentality" under ERISA some courts employ six factors

set forth by the IRS to define "agency or instrumentality" under 26 U.S.C. § 414(d) which

includes a definition of "governmental plan" that is nearly identical to the definition contained in

29 U.S.C. § 1002(32).  *See, Rose v. Long Island R.R. Pension Plan*, 828 F.2d 910, 917-918 (2nd

Cir. 1987).  The factors include

> (1) whether [the entity] is used for a governmental purpose and performs a
> governmental function; (2) whether performance of its function is on behalf of
> one or more states or political subdivisions; (3) whether there are any private
> interests involved, or whether the states or political subdivisions involved have
> the powers and interests of an owner; (4) whether control and supervision of the
> organization is vested in public authority or authorities; (5) if express or implied
> statutory or other authority is necessary for the creation and/or use of such an
> instrumentality, and whether such authority exists; and (6) the degree of financial
> autonomy and the source of its operating expenses.

*Id*. (*quoting* Revenue Ruling 57-128, 1957-1 C.B. 311).

Applying these considerations here,

### Factors 1-2

The undersigned reiterates that the Department of Education, through its various

management boards, and in turn, the state universities (including ULM), is tasked with educating

the people of the State of Louisiana.  La. R.S. 36:642.  Thus, at least organizationally, ULM is

fulfilling the mandate of the Department of Education.

### Factor 3

There is no indication that there are any private interests involved; rather, the Board of

Supervisors for the University of Louisiana System enjoys the powers and interests of an owner.

---

[9]  The undersigned further observes that as a civil servant, plaintiff appears to have been a
state employee.  (*See* Pl. M/Remand, Exh. 2 [doc. # 8]).

See La. R.S. 17:3351 (setting forth powers and duties of university boards).

### Factor 4

Only to a limited extent is control of ULM vested in public authority because once the board is appointed by the governor, it appears that it remains relatively autonomous.  However, to be reappointed by the governor for a second term, it stands to reason that the board member would have to stay in the governor's good graces.  Thus, at least during a member's first term, he or she remains accountable to the governor, who, of course, answers to the citizenry.

### Factor 5

ULM and its board of supervisors were created by the state constitution and/or legislation. There is no indication that such a state-funded institution could be created without enabling legislation.

### Factor 6

 Finally, although ULM's governing board is authorized to accept donations, borrow money, issue bonds, and set tuition, its ability to do so is circumscribed by statute.  *See* La. R.S. 17:3351(A)(2)-(5).  Moreover, a significant portion of ULM's funding comes from the state.  *See e.g.*, La. Const. Art. 8, § 12.

It is also noteworthy that several of the foregoing factors coincide with the six factors that the Fifth Circuit employs to determine whether an entity is an arm of the state for purposes of Eleventh Amendment immunity.[10]  In *Delahoussaye v. City of New Iberia*, the Fifth Circuit

---

[10]  Those factors include,

(1)     whether the state statutes and case law characterize the agency as an arm of the state;

(2)     the source of funds for the entity;

(3)     the degree of local autonomy the entity enjoys;

applied these factors in holding that the University of Southwestern Louisiana, a sister school to

ULM in the University of Louisiana system, is an arm of the state. *Delahoussaye, supra.*

For the additional reasons explained by the *Delahoussaye* court, the undersigned finds

that consideration of the six IRS factors compels a finding that ULM is a state agency or

instrumentality for purposes of the "governmental plan" ERISA exclusion.[11]

## III.    Conclusion

In sum, removing defendant has failed to establish the stringent circumstances that

authorize a federal court to exercise federal question jurisdiction via complete ERISA

preemption. *See Shirley, supra.*  Accordingly, subject matter jurisdiction is lacking, and remand

is required.  28 U.S.C. § 1447(c); *see also, Shirley, supra* (ordering remand to state court).

For the foregoing reasons,

The motion to remand [doc. # 5] filed by plaintiff Gary L. Scott is hereby **GRANTED**;

_____

(4)       whether the entity is concerned primarily with local, as opposed to statewide, problems;

(5)       whether the entity has authority to sue and be sued in its own name;

(6)       whether the entity has the right to hold and use property.
*Delahoussaye v. New Iberia*, 937 F.2d 144, 147 (5th Cir. 1991).

[11]  In its memorandum, Unum cited several cases with outcomes favorable to its position. *See e.g., Krupp v. Lincoln University*, 663 F. Supp. 289 (E. D. Pa. 1987).  However, there is no indication that the entities in those cases share equivalent state-related characteristics to ULM and its governing board.  In any event, those cases are not binding on this court.
Unum also cited language from *Noland v. Sun Life Assurance Co. of Canada*, where the Fifth Circuit stated that "[w]e assume without deciding that the disability plan offered by appellant Nolan's [sic] employer, Louisiana State University, was an employee benefit plan subject to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461." *Noland v. Sun Life Assurance Co. of Canada*,  2001 WL 360775 (5th Cir. Mar. 19, 2001) (unpubl.).  However, the *Noland* court was not obliged to *sua sponte* address whether the plan was a "governmental plan," because jurisdiction in that case was premised upon diversity -- not federal question.  (*See* Brief of Sun Life Assurance Company of Canada, *Noland v. Sun Life Assurance Co. of Canada*, 2000 WL 34030253, Docket No. 00-30943 (5th Cir. 2000).

the case shall be **REMANDED** to the Fourth Judicial District Court for the Parish of Ouachita.

THUS DONE AND SIGNED at Monroe, Louisiana, this 13th day of October 2009.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE

13