RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 1/11/2010
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| GARY L. SCOTT | CIVIL ACTION NO. 09-0922 |
| VERSUS | JUDGE ROBERT G. JAMES |
| UNUM LIFE INSURANCE COMPANY OF AMERICA | MAG. JUDGE KAREN L. HAYES |

MEMORANDUM RULING

Before the Court is Defendant Unum Life Insurance Company of America's ("Unum") Appeal [Doc. No. 16] of Magistrate Judge Hayes's Memorandum Ruling [Doc. No. 12] remanding this case to state court. For the following reasons, Unum's Appeal is DENIED.

I.     FACTUAL AND PROCEDURAL BACKGROUND

The University of Louisiana at Monroe ("ULM") employed Plaintiff Gary L. Scott ("Scott") as a plumber from August 6, 1991 to January 17, 2007, when he retired because of a disability. Several years prior to his disability, Scott had purchased a long-term disability insurance policy from Unum (the "Unum plan"). Unum paid Scott disability benefits under the plan from December 2, 2006, to December 1, 2008, but then abruptly terminated his benefits. Scott appealed the termination through Unum's internal process, but was unsuccessful.

On April 29, 2009, Scott filed a Petition [Doc. No. 1, Attachment 1] against Unum in the Fourth Judicial District, Ouachita Parish, Louisiana, alleging Unum had unlawfully terminated the benefits he was due under the insurance plan. On June 4, 2009, Unum removed the case to this Court on the basis of federal question jurisdiction, 28 U.S.C. § 1331. Unum argued that the Unum plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. §§ 1001-1461, completely preempting the state law claims in Scott's Petition and granting federal question jurisdiction. On June 19, Scott filed a Motion to Remand [Doc. No. 5], arguing that the Unum plan fell within the "government plan" exception of ERISA. Magistrate Judge Hayes granted Scott's Motion to Remand on October 13, 2009 [Doc. Nos. 12, 13]. The Magistrate Judge found ERISA did not apply to the Unum plan on two bases: 1) the Unum plan falls within ERISA's "safe harbor" provision precluding a plan from ERISA consideration, and 2) the Unum plan was a "government plan," excepted by the terms of ERISA.

Magistrate Judge Hayes stayed her judgment for 15 days to allow Unum a chance to appeal. On October 28, 2009, Unum filed the Appeal currently before the Court.

## II. LAW AND ANALYSIS

Plaintiff's Motion to Remand is a non-dispositive pre-trial matter.[1] Under 28 U.S.C. § 636(b)(1)(A) and FED. R. CIV. P. 72(a), the Court reviews a magistrate judge's rulings on a non-dispositive matter only to determine whether they are clearly erroneous or contrary to law.

As the removing party, Unum bears the burden of demonstrating federal jurisdiction. *In Re: Hot-Head, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007). In its Appeal, Unum states that it does not dispute the facts as outlined by Scott and Magistrate Judge Hayes, or the "analytical framework of the Magistrate's analysis of the case" [Doc. No. 16, p.2]. Unum disagrees only

---

[1] The Court is aware that other courts have held that motions to remand are dispositive motions and review a magistrate judge's rulings on them de novo. However, the Fifth Circuit has not addressed what standard of review should be applied to a district court's review of a magistrate judge's ruling on a motion to remand, and this Court has adhered to the view that a motion to remand is a non-dispositive pretrial matter and applies the clearly erroneous/contrary to law standard of review. *Davis v. Kemp*, No. 08-2027, 2009 WL 1307890, at *1 (W.D. La. May 11, 2009). Regardless, under either standard, the Court agrees with Magistrate Judge Hayes that the Unum plan is not preempted by ERISA because it falls within the safe harbor provision and/or because it is a government plan.

with the two primary conclusions at which the Magistrate Judge arrived when applying the facts to the law.

### A. ERISA Preemption

ERISA comprehensively regulates employee benefit plans. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). If a participant in an employee benefit plan could have brought his or her claim under ERISA, it completely preempts his or her cause of action, and the Court has subject matter jurisdiction over the case. *Id.* at 209-210. Whether a participant could have brought their suit under ERISA turns on whether their employee benefit plan is an "ERISA plan." *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 976 (5th Cir. 1991). If it is not, ERISA does not apply, and the Court lacks subject matter jurisdiction. *Id.*

Under ERISA, "employee benefit plans" encompass "employee welfare benefit plans." 29 U.S.C. § 1002(3). ERISA defines an "employee welfare benefit plan" as "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries . . . benefits in the event of sickness, accident, disability, death or unemployment . . . ." 29 U.S.C. § 1002(1).

The Fifth Circuit uses a three-prong test to determine whether a particular plan is an ERISA plan. *Shearer v. Southwest Service Life Ins. Co.*, 516 F.3d 276, 279 (5th Cir. 2008). To qualify as an ERISA plan, the program must 1) be a plan, 2) not fall within the safe-harbor provision established by the Department of Labor, and 3) be established or maintained by the employer with the intent to benefit employees. *Id.*

The Department of Labor's safe harbor provision precludes plans from ERISA consideration where (1) the employer does not contribute to the plan; (2) participation is

voluntary; (3) the employer's role is limited to collecting premiums, remitting them to the insurer, and publicizing the plan (but not endorsing it); and (4) the employer receives no benefit from the plan. 29 C.F.R. § 2510.3-1(j). All of these requirements must be met for the plan to fall within the safe harbor provision.

In this case, the Magistrate Judge determined that a plan existed but that it fell within the safe harbor provisions, so it was not an ERISA plan. She found, and Unum does not dispute, that there was no question that the Unum plan met the first, second, and fourth safe harbor criteria. The Magistrate Judge also found that the Unum plan met the third criterion, which Unum challenges in this Appeal.

The Magistrate Judge relied on ULM's website to determine that ULM had "plainly distanced itself from the Unum plan" [Doc. No. 12, p.7], limiting its role in the Unum plan sufficiently to meet the third criterion of the safe harbor provision. She found that, although the Unum plan terms required ULM to provide Unum with employee information and to forward a certificate to each participant, ULM's website directed prospective enrollees to contact a Unum representative, indicating that, in practice, employees obtained plan information directly from Unum. Further, she noted that the Unum policy is listed on ULM's website under the subheading "Supplemental Insurance," as opposed to the "Health Insurance" subheading, which states the plans listed there are administered through ULM's Office of Human Resources. Based on these considerations, Magistrate Judge Hayes determined that the Unum plan fell within the ERISA safe harbor provision.

B.  **Consideration of ULM's Website**

Unum first asserts that ULM's website is impermissible hearsay, and the Magistrate

Judge improperly relied on it in making her decision. The only Fifth Circuit case Unum relies on for this assertion is *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 75 F. Supp. 2d 773 (S.D. Tex. 1999), which declined to allow the plaintiff in that case to use website evidence to prove ownership of property, a very different situation from this. In fact, the Fifth Circuit has allowed and considered website evidence. *See Peterson v. City of Fort Worth*, WL 3818826 (5th Cir. 2009) (considering statements on a police department's website as evidence of its size in holding that given the department's size, the number of incidents of excessive force over four years did not reflect a pattern of an official policy condoning it); *DIRECTV Inc. v. Robson*, 420 F.3d 532 (5th Cir. 2005) (considering message posted on a satellite piracy website as circumstantial evidence of purchase and possession of piracy equipment, although finding it insufficient to show actual interception of satellite transmissions); *U.S. v. Simkanin*, 420 F.3d 397 (5th Cir. 2005) (holding that district court's admission of a document posted by a tax crime defendant on his website was not abuse of discretion); *August v. Boyd Gaming Corp.*, 135 Fed. Appx. 731 (5th Cir. 2005) (considering statement on casino's website that it was owned and operated by its parent company in holding that plaintiff had adequately alleged grounds for direct liability of the parent company). ULM's website was relevant in determining the level of ULM's involvement with the Unum plan, and it was not improper for the Magistrate Judge to consider it.

## C. Consideration of Unum's Supplemental Evidence

On appeal, Unum offers supplemental evidence regarding ULM's involvement with the Unum plan. Unum asserts it did not offer this evidence in its Memorandum in Opposition [Doc. No. 9] to Scott's Motion to Remand because Scott's Motion to Remand was based solely on the government entity exception and did not challenge whether the plan was an ERISA plan--the

Magistrate Judge considered that issue *sua sponte*.

Unum argues that the Court reviews the Magistrate Judge's ruling de novo and has authority to consider this evidence under 28 U.S.C. § 636(b)(1) and FED. R. CIV. PRO. 72(b). However, the provisions Unum cites apply to a district court judge's review of a magistrate's report and recommendation on a dispositive motion. This Court considers Scott's Motion to Remand a non-dispositive pre-trial motion,[2] however, and the Court may reconsider the Magistrate Judge's ruling on it only if Unum can show it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); *Davis*, 2009 WL 1307890, at *1. Title 28, Section 636(b)(1)(A) of the United States Code is silent as to whether the Court may receive additional evidence when reviewing a magistrate judge's order on a non-dispositive pre-trial motion. In the circumstances of this case, the Court finds it is proper to consider Unum's additional evidence to determine whether the Magistrate Judge's order of remand was clearly erroneous or contrary to law.

**D.    Whether the Unum Plan Falls Within the Safe Harbor Exclusion**

As described above, one of the two issues on appeal is whether the Unum plan meets the third criterion of the safe harbor exclusion. The third criterion of the safe harbor provision requires that the "sole functions of the employer . . . with respect to the program are, without endorsing the program, to permit the insurer to publicize the program . . . to collect premiums through payroll deductions . . . and to remit them to the insurer." 29 C.F.R. § 2510.3-1(j). The primary inquiry under this criterion is the employer's involvement with the plan. *Hanson*, 940 F.2d at 977. However, the perception of a reasonable employee is also relevant in determining endorsement. *Davis v. Guardian Life Ins. Co.*, No. 05-0121, 2007 WL 2491344, at *5 (W.D. La.

---

[2] *See supra*, Footnote 1.

Aug. 30, 2007) (citing *Burgess v. Cigna Life Ins. Co. of New York*, No. 04-0841, 2005 WL 3501897, at *3 (W.D. Tex. Dec. 22, 2005). The third criterion of the safe harbor provision suggests that the provision may be invoked only when the employer's role is reduced to ministerial functions as opposed to that of a fiduciary. *Bankston v. Unum Life Ins. Co.*, No. 07-5507, 2009 WL 57104, at *5 (E.D. La. Jan. 8, 2009).

    Factors tending to show that an employer has exceeded the limits of the third criterion of the safe harbor provision include employing a benefits administrator for the plan, assisting in the completion of forms, accepting claims forms from participants and submitting them to the insurer, handling general employee inquiries, distributing booklets bearing the employer's logo that encourage enrollment or include a statement that the plan is governed by ERISA, or otherwise assuming responsibility for administration of the plan. *Hanson*, 940 F.2d at 977; *Davis*, 2007 WL 2491344, at *5; *Weigle v. AIG Ins. Co.*, 908 F.Supp. 371, 374 (M.D. La. 1995). Other factors tending to show involvement in the plan beyond allowing its publication and collecting premiums include selecting terms and provisions of the plan, retaining the right to terminate the plan, administering the open enrollment period, distributing certificates of insurance, internally keeping records of insurance, and providing information about employees. *Cardona v. Life Ins. Co. of North America*, No. 09-0833, 2009 WL 3199217, at *6 (N.D. Tex. Oct. 7, 2009); *Memorial Hermann Hosp. Sys. v. Coventry Health and Life Ins. Co.*, No. 07-3816, 2008 WL 2714120, at *5-6 (S.D. Tex. July 10, 2008); *Simmons v. Reliance Standard Life Ins. Co.*, No. 07-9206, 2008 WL 2184995 (E.D. La. May 19, 2008); *Burgess*, 2005 WL 3501897, at *3; *Thompson v. Unum Life Ins. Co. of America*, No. 03-0277, 2005 WL 722717, at *6 (N.D. Tex. Mar. 29, 2005); *Weigle*, 908 F.Supp. at 374.

No single factor is dispositive, however. Courts have found that even where some of these factors are present, if an employer performs only ministerial tasks with regard to the plan, does not process claims, takes steps to make its role in the plan clear, avoids the appearance of endorsement, and does not otherwise compromise its neutrality with regard to the plan, the employer has not exceeded the limits of the third criterion of the safe harbor exclusion. *Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118, 1121-22 (9th Cir. 1998); *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1137 (1st Cir. 1995); *Davis*, 2007 WL 2491344 at *6-7; *Dontas v. Metropolitan Life Ins. Co.*, No. 91-503, 1993 WL 99189, at *7-8 (E.D. La. Mar. 31, 1993).

As evidence that ULM's involvement with the Unum plan exceeded the limits of the safe harbor provision, Unum submits ULM's Request for Proposals, which imposed certain plan requirements on carrier submissions [Doc. No. 16-3]. One of these requirements ensured that only representatives approved by the university could contact employees; other requirements related to guaranteed issue, elimination period, policy termination, and waiver of premiums.[3] Additionally, Unum points out that ULM has the authority to cancel the policy. Unum also offers evidence that, at various times between 1996 and 2009, ULM agents contacted Unum to order booklets explaining the policy with ULM's logo on the front, to request that Unum change the plan year to coincide with ULM's cafeteria plan, to request that Unum change the name of the plan to reflect a change in the University's name, to change the agent or broker of record for the policy and the ULM contact on the contract, and to request that a specific individual's policy

---

[3] Unum also offers evidence that ULM's agent submitted an application for participation in the plan to Unum and executed a client information form to assist Unum in processing the contract, employee booklets, and bills. These are Unum's forms, however, and appear to have been required by Unum to complete the policy contract.

8

be reactivated following his return from military leave [Doc. No. 16, p.6-10].[4]

In *Davis*, decided by this Court in 2007, the insurer argued that the employee benefit association in that case exceeded the limits of the third criterion of the safe harbor provision because it stated in a flyer that it had selected the insurer, the insurer's plan was the only available option during enrollment, and the booklet distributed included the association's name on the cover, instructed employees to obtain claim forms from the association, and stated the plan was subject to ERISA. 2007 WL 2491344, at *4. In addition, the association met with the insurer's agents to discuss premium increases and distributed information about the increases to participants, and a plan participant testified that he obtained claim forms from the association. *Id.* at *5. This Court found that, despite these facts, the association had remained neutral and, in practice, all responsibility for the plan's administration fell on the insurer. *Id.* at 6-7.

As in *Davis*, the evidence offered here shows no more than ministerial involvement. ULM's involvement in solicitation, selection, and purchase of the plan does not remove the plan from the safe harbor provision. *Id.* at *6. Over more than ten years, ULM agents occasionally contacted Unum to resolve ministerial matters regarding the plan, but these infrequent contacts do not cause ULM to exceed the limits of the safe harbor provision. The fact that the booklet describing the plan had ULM's logo on the front and identified ULM as the policyholder does not constitute endorsement where the booklet did not encourage employees to enroll or advertise the plan as part of ULM's benefits package, and made it clear that ULM was not Unum's agent

---

[4]Additionally, Unum offers correspondence showing it sent ULM agents forms requested by ULM's broker and materials explaining administration of the plan. This is evidence of actions taken by Unum, however. It does not show that ULM agents actually distributed the forms to employees or used the administrative materials.

[Doc. No. 16-8, p.22]. *Id.* at *7. Further, as the Magistrate Judge noted, ULM's website shows it has distanced itself from the Unum plan. The website lists the Unum plan as one of many potential voluntary supplemental insurance plans and directs employees to an Unum representative for enrollment and benefit information.[5]

Following the Court's precedent in *Davis*, the Magistrate Judge found that the Unum plan fell within the safe harbor provision and was, therefore, not subject to ERISA. Even considering Unum's new evidence regarding ULM's involvement in the Unum plan, the Court finds that this ruling was neither clearly erroneous nor contrary to law.

### E. Whether the Unum Plan Falls Within the Government Entity Exception

The Magistrate Judge's ruling that the Unum plan was not subject to ERISA was sufficient basis to find lack of subject matter jurisdiction and grant Scott's Motion to Remand. However, the Magistrate Judge went on to find that the Court also lacked subject matter jurisdiction because, even if the Unum plan was an ERISA plan, it would fall within the ERISA exception for government plans. 29 U.S.C. § 1003(b)(1). On appeal to this Court, Unum challenges that ruling.

By its terms, ERISA does not apply to government plans. 29 U.S.C. § 1003(b)(1). ERISA defines a "government plan" as one "established or maintained for its employees by the . . . government of any State or political subdivision thereof, or any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32). ERISA does not further define "political subdivision" or "agency or instrumentality."

The Magistrate Judge found that ULM was a political subdivision under the "NLRB test"

---

[5] *See* http://www.ulm.edu/hr/policies/documents/insuranceplancontacts.pdf.

established by the Supreme Court in *National Labor Relations Board v. Natural Gas Utility Dist. of Hawkins Cty., Tenn.*, 402 U.S. 600 (1971). The NLRB test states that an entity is a political subdivision if it is either created by the State so as to constitute a department or administrative arm of the government, or administered by individuals who are responsible to public officials or the general electorate. *Shannon v. Shannon*, 965 F.2d 542, 547-548 (7th Cir. 1992). The Magistrate Judge determined ULM was a political subdivision because the Board of Supervisors for the University of Louisiana system is created by the Louisiana Constitution, the Legislature is constitutionally required to appropriate funds for the State boards and the institutions they oversee, and the Governor of Louisiana appoints the members of the Board of Supervisors with the consent of the Senate.

The Magistrate Judge also found that ULM was an agency or instrumentality, using factors set forth by the IRS to define "agency or instrumentality" under 26 U.S.C. § 414(d). The factors are set forth in Revenue Ruling 57-128, 1957-1 C.B. 311, which states:

> In cases involving the status of an organization as an instrumentality of one of more states or political subdivisions, the following factors are taken into consideration: (1) whether it is used for a governmental purpose and performs a governmental function; (2) whether performance of its function is on behalf of one or more states or political subdivisions; (3) whether there are any private interests involved, or whether the states or political subdivisions involved have the powers and interests of an owner; (4) whether control and supervision of the organization is vested in public authority or authorities; (5) if express or implied statutory or other authority is necessary for the creation and/or use of such an instrumentality, and whether such authority exists; and (6) the degree of financial autonomy and the source of its operating expenses.

Applying these factors, the Magistrate Judge found that ULM was an agency or instrumentality of the State because education is a governmental function which the State universities help fulfill, the Board of Supervisors enjoys the powers and interests of an owner with regard to ULM,

11

there is some degree of public accountability because the Board supervisors are appointed by the Governor, ULM and the Board were created by the State constitution and/or legislation, and a significant portion of ULM's funding comes from the State.

In its Appeal, Unum objects neither to the legal tests used to determine whether the Unum plan was a government plan, nor the facts as outlined by the Magistrate Judge. Unum simply asserts that the facts do not lead to the conclusions that the Magistrate Judge drew [Doc. 16 p.14, 19]. Unum cites cases that arguably could have supported a decision that ULM is not a political subdivision [Doc. 16, pp. 15-19, citing *Shannon*, 965 F.2d 542, and *Brock v. Chicago Zoological Society*, 820 F.2d 909 (7th Cir. 1987)]. Unum also argues that the Magistrate Judge could have applied the facts differently to determine ULM is not an agency or instrumentality [Doc. No. 16, pp.19-21].

However, the terms "political subdivision" and "agency or instrumentality" are not well-defined, and there is case law that supports the Magistrate Judge's outcome, as well. *See Kunin v. Feofanov*, 69 F.3d 59 (5th Cir. 1995); *Michigan v. U.S.*; 40 F.3d 817 (6th Cir. 1994.); *Shirley v. Maxicare Texas, Inc.*, 921 F.2d 565 (5th Cir. 1991); *Rose v. Long Island R.R. Pension Plan*, 828 F.2d 910 (2nd Cir. 1987). The Magistrate Judge concluded that even if the Unum plan met the definition of an ERISA plan, it is excepted from ERISA regulation as a government plan because ULM is a political subdivision or agency or instrumentality of the State. Given the multiple considerations weighed in determining whether an organization falls within these terms, and the facts the Magistrate Judge relied on in determining that ULM met these terms, the Court finds that the Magistrate Judge's conclusion was neither clearly erroneous nor contrary to law.

## III. CONCLUSION

For the foregoing reasons, the Court finds that Magistrate Judge Hayes's Memorandum Ruling and Judgment granting Scott's Motion to Remand [Doc. Nos. 12, 13] was neither clearly erroneous nor contrary to law. Accordingly, Unum's Appeal [Doc. No. 16] is DENIED.

MONROE, LOUISIANA, this **8** day of January, 2010.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE